United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN T.,[1]
Plaintiff,
v.
SSA COMMISSIONER, et al.,
Defendants.

Case No. 25-cv-05549-NW

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 9, 12

Plaintiff Jonathan T. seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. ECF No. 9 ("Pl. Br."). The Commissioner cross-moves to affirm. ECF No. 12 ("Comm. Br."). For the reasons stated below, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment.

## I. BACKGROUND

On April 19, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning September 11, 2018. AR 330–44. On June 5, 2024, Administrative Law Judge ("ALJ") Melinda Yurich held a telephonic hearing, at which Plaintiff appeared with counsel. AR 51–80. The ALJ held the record open for two weeks to allow Plaintiff to submit therapy records. AR 24, 79. In response, Plaintiff submitted a letter from Gina Mazzetti, Licensed Marriage and Family Therapist ("LMFT"); a letter from

[1] Partially redacted pursuant to Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

David Rockman, MS and Associate LMFT; and a list of treatment dates at Izzo Marriage and Family Therapy. AR 24, 1585–89. On July 10, 2024, the ALJ issued an unfavorable decision. AR 21–50.

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease, osteoporosis, diabetes mellitus, plantar fasciitis, degenerative joint disease of the foot, venous insufficiency, cognitive impairment due to traumatic brain injury, major depressive disorder, and post-traumatic stress disorder. AR 27. The ALJ further found that Plaintiff has the following nonsevere impairments: hyperlipidemia, diabetic retinopathy, and macular edema. *Id.*

The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and walk up to 4 hours a day and sit up to 6 hours a day. He can occasionally climb, balance as that term is defined in the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl, must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery, and must avoid concentrated exposure to extreme heat. He can understand, remember, and carry out simple instructions, can interact with supervisors and co-workers occasionally, and cannot work with the general public.

AR 30–31.

A vocational expert ("VE") testified that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the requirements of small parts assembler, hand packager, and garment sorter. AR 44, 76–77.

After the Appeals Council denied review of the ALJ's decision (AR 1–6), Plaintiff sought review in this Court.

## II. LEGAL STANDARD

Under the Social Security Act, a claimant is considered "disabled" if they meet two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 1382c(a)(3)(A)–(C) (the analysis is substantially similar under Title II and Title XVI). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments

must be severe enough that the claimant is unable to perform their previous work and cannot, based on their age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," the claimant can still do his "past relevant work" and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation modified). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* Simply put, "[i]n Social Security cases, federal courts 'are not triers of fact'," *M.L. v. Kijakazi*, No. 20-CV-07919-RS, 2023 WL 1927735, at *3 (N.D. Cal. Feb. 10, 2023) (citations omitted), and if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner," *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (citation modified). "Finally, [district courts] may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. District courts have the power to enter a judgment, "upon the pleadings and transcript of the record," with or without remanding the complaint for a rehearing. 42 U.S.C. § 405(g).

## III. DISCUSSION

Plaintiff argues the ALJ erred in failing to (1) provide clear and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction, (2) fully develop the record, and (3) properly evaluate the medical opinions.

### A. The ALJ's Credibility Determination

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Hum. Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [district courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate "specific, cogent reasons" for their credibility determination. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger*, 464 F.3d at 972 (internal quotation marks omitted); *see also Thomas*, 278 F.3d at 958 (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also

consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

**2. Analysis**

Applying the two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 32; *id.* (Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . are inconsistent with the overall record that shows the claimant's condition was not as debilitating as alleged.").

As the ALJ did not find evidence of malingering, the ALJ was required to provide "specific, clear and convincing reasons for" discrediting Plaintiff's testimony regarding the severity of his symptoms. *Lingenfelter*, 504 F.3d at 1036.

**a. Reports of Chronic Pain**

The ALJ cited evidence that Plaintiff did not consistently report chronic pain to his medical providers. AR 36–37 ("He has presented to care with no complaints. . . . Moreover, he stated that he dealt with the thoracic fractures only 'periodically' and advised providers that he was doing fine overall (10F/6; 13F/20; 15F/51, 88, 105; 17F/13, 59). Reviews of systems show he has denied fatigue, weakness, loss of appetite, chills, back or joint pain, numbness, focal weakness, or sensory changes (9F; 15F; 17F)."); *see* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist [courts] in making reasonable conclusions about the intensity and persistence of [a plaintiff's] symptoms"). The ALJ also noted that "although physical examinations revealed some abnormal findings, as discussed above, the record also shows the examinations were often unremarkable." AR 37. In particular, the ALJ found that

> [Plaintiff] presented as not diaphoretic or ill- or toxic-appearing. He was in no acute distress and appeared well and comfortable. He sat comfortably in a chair. He could get on and off the exam table. Musculoskeletal range of motion was within normal limits. He could move his upper extremities appropriately. Cervical rotation bilaterally and lateral flexion was normal.

> Lumbar range of motion was within normal limits and straight leg raising was negative bilaterally in seated and supine positions. Thoracic paraspinous muscles were nontender. The ankles were stable and showed free range of motion. Ankle provocative testing was negative. Toe and foot plantar and dorsiflexion and foot inversion and eversion were painless and full strength. Forefoot rotation was painless bilaterally. No tenderness to palpation was noted about the foot or ankles. Dorsalis pedis, posterior tibial pulses, and pedal pulses were intact bilaterally. No varicosities, erythema, or ecchymosis were noted. Light touch sensation was present bilaterally. Achilles posterior tibialis and peroneal tendons were intact bilaterally. Motor bulk and tone were normal. Strength was generally full (5/5) in the bilateral upper and lower extremities, including grip strength. No myotomal deficits were noted. Sensation was grossly intact to light touch and pinprick throughout the bilateral upper and lower extremities. Cranial nerves II-XII were grossly intact. Capillary refills were brisk. Coordination revealed normal finger-to-nose without dysmetria. He could toe, heel, and tandem walk and walked with a nonantalgic, intact gait (1F; 5F; 9F; 11F; 13F; 15F; 17F).

AR 37.

The foregoing amounts to "specific, clear and convincing reasons for" discrediting Plaintiff's testimony regarding the severity of his symptoms. *Lingenfelter*, 504 F.3d at 1036. The ALJ therefore did not err in finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 32.[2]

**b. Activities of Daily Living**

The ALJ found that Plaintiff's "activities of daily livings are full." AR 38. The ALJ cited Plaintiff's testimony "that he drives, exercises, prepares meals, does laundry, and goes on his computer." *Id.*; *see* AR 57, 64–66. The ALJ also cited evidence that Plaintiff has regularly exercised throughout August 2019 and January 2024, including doing cardio and weightlifting. AR 38.

---

[2] Plaintiff argues that the ALJ erred by failing to consider "the fluctuating nature of Plaintiff's symptoms[.]" Pl. Br. at 7 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021)). Plaintiff's reliance on *Garrison* and *Smith* is misplaced, as both cases involved claimants with mental health issues. *Garrison*, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."); *Smith*, 14 F.4th at 1110 (claimant alleging disability "due to mental health problems triggered by an acute grief reaction"). Plaintiff does not explain why those holdings should apply here, where the ALJ was considering Plaintiff's physical ailments.

If a plaintiff engages in daily activities that are incompatible with the severity of symptoms alleged, this can support an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). But "'claimants should not be penalized for attempting to lead normal lives in the face of their limitations.'") *Smith v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ability to maintain some daily activities does not translate into a negative determination about credibility regarding ability to work. *See Garrison*, 759 F.3d at 1016 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). "Only if the level of activity were inconsistent with claimant's claimed limitations would these activities have any bearing on claimant's credibility." *Reddick*, 157 F.3d at 722.

The fact that Plaintiff drives, prepares meals, and does chores does not necessarily support an adverse credibility determination. *See Smith*, 820 F. App'x at 585. What is more compelling, though, is the evidence that Plaintiff regularly exercises. AR 608 (August 21, 2019, "He does exercise about an hour a day."); AR 893 (May 15, 2020, "His workout regimen includes running and weight lifting."); AR 592, 1011 (March 22, 2021, "He works out regularly, cardio and doing dumbbells."); AR 989 (June 27, 2022, "Doing some light exercising: regularly, cardio and doing dumbbells."); AR 979 (July 25, 2022, "Exercise tolerance: Reports using a stair climber 15-30 minutes daily, engaging in PT exercises/stretches"); AR 973 (December 19, 2022, "Doing some light exercising: regularly, cardio and doing dumbbells."); AR 1373 (October 23, 2023, "The patient's current weight bearing activity includes weight lifting daily."); AR 1431 (January 8, 2024, "Patient is active and exercises daily at home with upright stepper and dumbbell weight lifting."); AR 1447 (January 8, 2024, "Doing some light exercising: regularly, cardio and doing dumbbells.").

Of particular note is a January 15, 2020 Physician's Physical Clearance & Limitation Form from the South Bay Regional Police Academy, completed by treating physician Dr. Dominic Ho, M.D., in which Dr. Ho cleared Plaintiff to perform all physical conditioning activities, firearms training, defensive tactics, defensive driving, scenario training and testing, and physical assessment test. AR 599–602. This included performing "[c]ardiovascular development using interval repetitions and/or endurance cycles (20-40 minutes at Target Heart Rate) accomplished primarily through sustained running/jogging"; using a stationary or regular bicycle, stair climber, rowing machine, and elliptical machine; "[j]ogging up and down stairs and/or hills"; "[r]un[ning] or sprint[ing] 25 yards, perform calisthenics"; performing "warm-up exercises . . . includ[ing]: push-ups, sit-ups, up-downs (burpees), stretching, neck rotations, etc."; "support[ing] [the] body weight of another person while demonstrating take downs and handcuffing techniques"; performing "[t]ake down maneuvers, repetitive knee bends, lunges, ground fighting exercises and repetitive body rotation maneuvers"; and performing "[r]epetitive standing, walking, and jogging on various surfaces." AR 600–01. Dr. Ho also cleared Plaintiff to undergo a physical assessment test consisting of dragging a 165 pound dummy 32 feet; run 25 yards, climb over a solid and chain link fence, and run 5 yards; run/sprint 99 yards; a 500 yard run for time; a 1.5 mile run as fast as possible, abdominal curls; sit and reach, and as many continuous pushups as possible. AR 601. Plaintiff does not identify any injuries that post-date this evaluation that accounts for his later complaints of pain and restricted activities.

Considering the above, the ALJ properly discounted Plaintiff's subjective symptom testimony. *See Dereke G. v. O'Malley*, No. 23-CV-06726-RMI, 2025 WL 834216, at *7 (N.D. Cal. Mar. 17, 2025) ("[T]he ALJ properly discounted Plaintiff's physical symptom testimony" of "significantly diminished walking capacity" in light of, among other things, "'the claimant's demonstrated ability to lift weights, use a Stairmaster, and use a treadmill on a regular basis.'") (citation omitted); *Timofeeva v. Colvin*, No. 14-CV-2560 AC, 2016 WL 916256, at *5 (E.D. Cal. Mar. 10, 2016) ("It is well established that a claimant's ability to engage in some daily activities, or to exercise occasionally or to try to improve her condition is not proof that she is not disabled. . . . However, the evidence of plaintiff's contradictory testimony, and her testimony

that she engages in these activities *every day* is additional evidentiary support for the ALJ's finding that plaintiff was not credible, since she testified that there are 4-5 days in every biweekly cycle when she can do nothing at all.") (emphasis in the original).

**B. The ALJ's Development of the Record**

Plaintiff argues the ALJ failed to fully develop the record by not requesting Plaintiff's psychotherapy records and records regarding Plaintiff's chronic kidney disease.

"The ALJ has a duty to conduct a full and fair hearing." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). This includes the ALJ's "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (ellipses in the original). But the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citation omitted); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citations omitted).

At the hearing, the ALJ asked, "And are there any outstanding records, or is the record complete?" AR 56. In response, Plaintiff's counsel stated, "It's complete as I know it, Judge. Thank you." *Id.* But at the end of the hearing, Plaintiff's counsel represented that "there are . . . therapy records out there that's not part of the record. So, I would ask relief to do that . . . ." AR 79. In response, the ALJ agreed to give Plaintiff two additional weeks to submit his therapy records. *Id.*; *see* AR 24 ("I left the record open for 2 weeks for [Plaintiff] to submit therapy records."). The ALJ further stated that, "if you need additional time, please just contact my office before the end of the two weeks, okay?" AR 79.



United States District Court
Northern District of California

Plaintiff submitted the following: (1) an October 19, 2023 letter from Gina Mazzetti, LMFT; (2) a June 13, 2024 letter from David Rockman; and (3) a letter from Izzo Marriage and Family Therapy, PC with the dates of Plaintiff's remote therapy sessions between July 5, 2021 and June 21, 2024 for "ongoing treatment Post Traumatic Stress Disorder with depression and anxiety." AR 24, 1585–89. "These records were added to evidence as Exhibits 18F to 20F, and considered along with the other evidence of record prior to the issuance of [the ALJ's] decision." AR 24. Plaintiff did not submit treatment records for the dates of treatment identified in the letter from Izzo Marriage and Family Therapy. AR 37–38 ("Despite [Plaintiff's] therapists noting that he is treatment for PTSD and providing a list of treatment dates, there record does not contain treatment records documenting the extent of the alleged limitations (18F; 19F; 20F).").

**1. Psychotherapy Records**

Plaintiff contends that Rockman's letter "put the ALJ on notice that such treatment notes were in existence" and that the ALJ should have requested them. Pl. Br. at 9. Plaintiff did not request additional time to submit records to the ALJ, nor does he offer any explanation as to why he failed to submit the records during the two weeks the ALJ held the hearing open.

By holding the hearing open, the ALJ fulfilled her duty to develop the record. *See Tonapetyan*, 242 F.3d at 1150. The fact that the ALJ did not follow up after Plaintiff failed to submit the necessary documentation is not grounds for reversal. *Symonds v. Saul*, No. 19-cv-01375 WBS CKD, 2020 WL 2556755, at *5 (E.D. Cal. May 20, 2020), *report and recommendation adopted*, No. 19-cv-01375 WBS CKD, 2020 WL 3256328 (E.D. Cal. June 16, 2020) (ALJ fulfilled duty to develop record where "plaintiff had the opportunity to submit any additional probative medical records, but did not supplement the record when given the chance."); *Wilson v. Comm'r of Soc. Sec.*, No. 14-cv-01392-AWI-SAB, 2016 WL 4402108, at *6 (E.D. Cal. Aug. 18, 2016) ("Plaintiff bears the burden to provide that record so that the ALJ can make an informed decision. . . . By allowing Plaintiff to supplement the record, the ALJ faithfully discharged any duty he may have had to develop the record.") (citations omitted); *Romero v. Colvin*, No. 14-CV-02046-MEJ, 2015 WL 3523389, at *13 (N.D. Cal. June 4, 2015) ("[A]t the hearing, the ALJ told Plaintiff's representative that he would keep the record open for one week so

United States District Court
Northern District of California

that Plaintiff could submit additional evidence. . . . Thus, Plaintiff had the opportunity to submit additional evidence to the ALJ, but chose not to do so. 'The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record.'") (record citation omitted; quoting *Hernandez v. Astrue*, No. C 11-2692 CW, 2012 WL 4466580, at *10 (N.D. Cal. Sept. 26, 2012)).

**2. Records of Kidney Disease**

Plaintiff further argues that the ALJ erred in failing to request documentation regarding Plaintiff's chronic kidney disease. This too lacks merit.

Plaintiff bears the burden of proving disability. *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled (see § 404.1513). This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.").

As an initial matter, Plaintiff did not identify kidney disease as causing his disability. *See* AR 82 ("The individual filed for Initial claim for disability on 04/19/2021 due to the following illnesses, injuries or conditions: traumatic brain injury; anxiety; depression; trouble handling stress; thoracic spine pain; back pain; bone density problems; osteoperosis[.]");

Plaintiff further contends that "[i]t is unclear from the under-developed record whether Plaintiff ever saw a nephrologist, but this ambiguity should have been clarified by the ALJ." Pl. Br. at 11. But Plaintiff does not allege the existence of any treatment notes from a nephrologist that he could have submitted for consideration.

To that end, Plaintiff also fails to explain why such records were not submitted in the first instance, or why the records were not submitted during the period the ALJ held the hearing open, even though his counsel was aware of the issue. Indeed, Plaintiff's counsel questioned Plaintiff about the effect of his kidney function on his ability to work:

> Q. . . . Are you having any problems with your bathrooming, like urinating? Is that a problem or no problem?
>
> A. I went to a doctor specific on kidney function, and we discussed some things and did like a basic ultrasound. And I had like some cysts kind of like in that direction where I would urinate. So, it's kind of part why, when I was working every hour max, I'd want to go to the bathroom. So, that was a part of working, too, that was an issue.
>
> Q. Okay. I want to make sure I heard that right. So, about when you work a longer period of time per day, you would have to go to the bathroom about one time per hour.
>
> A. Yeah, at the 30-minute to an hour window I'd go to the restroom. So, that was something – and when I kind of recently heard from the doctor, you know, that cyst thing kind of caused the issue a lot more.

AR 72–73. Despite this testimony, counsel did not identify any missing records during the hearing or submit any relevant documentation regarding Plaintiff's kidney functionality.

On this record, where it is unclear whether Plaintiff had additional records to submit, nevertheless had an opportunity to submit such records while the ALJ held the hearing open, and still did not do so, the Court cannot find the ALJ committed reversible error.

**C. The ALJ's Weighing of Medical Evidence**

The ALJ further found the opinions of Plaintiff's treating physician, Dr. Dominic Ho, M.D., and psychiatric consultative examiner, Dr. Salvador-Moses, to be unpersuasive.[3] AR 40–42.

---

[3] Plaintiff's opening brief discusses the ALJ's evaluation of the opinions of State agency medical consultants B. Williams, M.D., and H. Samplay; State agency mental consultants N. Genece, Psy.D. and S. Koutrakos, Psy.D.; and consultative physician Dr. Enweze. Pl. Br. at 12–13. But Plaintiff's reply does not address the Commissioner's opposition arguments with respect to these findings. ECF No. 13 (Pl. Reply) at 6. Plaintiff's reply argument with respect to this issue states in full:

> Plaintiff maintains that the ALJ failed to properly evaluate the medical opinions in the record. Specifically, the ALJ erred in rejecting the treating opinion of Dominic Ho, M.D., and the consultative examining opinion of Caroline Salvador-Moses, Psy.D. In this regard, Plaintiff stands on the merits of the arguments raised in his Motion for Summary Judgment.

*Id.* Generally, a failure to address on reply an argument raised in an opposition brief constitutes waiver. *See Mesa v. Enloe Med. Ctr.*, No. 20-cv-02483-JAM-KJN, 2021 WL 1187274, at *3 (E.D. Cal. Mar. 30, 2021) ("In their reply brief, Plaintiffs do not address Defendant's waiver arguments. . . . The Court finds Plaintiffs' failure to address Defendants' legal arguments itself constitutes waiver."). Accordingly, the Court declines to consider whether the ALJ properly found the opinions of Dr. Williams, Dr. Samplay, Dr. Genece, Dr. Koutrakos, and Dr. Enweze persuasive.

United States District Court
Northern District of California

Plaintiff argues the ALJ failed to consider the factors of supportability and consistency, as required by 20 C.F.R. § 416.920c. Pl. Br. at 11–16.

**1. Legal Standard**

Plaintiff filed his applications for disability benefits and supplemental security income on April 19, 2019. AR 330–44. For applications filed on or after March 27, 2017, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). Under the revised regulations, the ALJ considers medical opinions using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(1)–(5).

Supportability and consistency are the most important factors. 20 C.F.R. § 416.920(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ may, but need not, consider other factors, such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id.* (citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v)). But "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.*

**2. Analysis**

**a. Dr. Dominic Ho, M.D.**

Treating physician Dr. Dominic Ho, M.D., treated Plaintiff between October 2016 and July 11, 2021. AR 556–644. On June 18, 2018, Dr. Ho examined Plaintiff and opined that Plaintiff could return to work on July 9, 2018, and work four days a week. AR 617. On July 27, 2018, Dr. Ho specified that Plaintiff could work from 8 a.m. to 5 p.m., or 10 a.m. to 7 p.m. AR 616. On September 17, 2018, Dr. Ho provided a letter stating that "[d]ue to [Plaintiff's] medical conditions from stress and anxiety, [Plaintiff] needs 1 year off from work to recover." AR 615. On September 19, 2019, Dr. Ho stated that Plaintiff could return to work on January 5, 2020. AR 613.

On January 15, 2020, Dr. Ho completed a Physician's Physical Clearance & Limitation Form from the South Bay Regional Police Academy. AR 599–602. As to the reported injury or condition, Dr. Ho wrote "traumatic brain injury 2015 hit by bus" and "seizure once 2015" and cleared Plaintiff to perform all activities required for police training. AR 599–601.

On April 26, 2021, Dr. Ho completed a questionnaire in which he identified Plaintiff's primary impairment as "Traumatic Brain Injury 2° MVA [secondary to motor vehicle accident]." AR 591. Dr. Ho further opined that Plaintiff could sit, stand, and/or walk without rest or support for two hours at a time and over an 8-hour period, and did not need to lie down the remainder of the day. *Id.* According to Dr. Ho, Plaintiff had been disabled since March 2015. *Id.*

The ALJ found Dr. Ho's assessments not persuasive because "many of his assessments are conclusory and simply state [Plaintiff] is unable to work" and "fail to explain how or why [Plaintiff's] medical conditions prevent him from working." AR 41. The ALJ further found that Dr. Ho's "assessments are not supported by Dr. Ho's own treatment records or consistent with the totality of the medical evidence, which revealed generally unremarkable physical examination findings including no neurological deficits, full strength in the bilateral upper and lower extremities, and intact gait and coordination." *Id.* In particular, the ALJ focused on Dr. Ho's Physician's Physical Clearance & Limitation Form which cleared Plaintiff for all types of physical

United States District Court
Northern District of California

activity, and the lack of "evidence of significant worsening of [Plaintiff's] condition that support Dr. Ho's subsequent overly restrictive assessments." *Id.*

Plaintiff argues the ALJ's evaluation is not supported by substantial evidence, as the ALJ failed to identify "specific evidence to support the characterization of the record as 'generally unremarkable,'" and contends that "much of the medical evidence actually shows significantly abnormal findings[.]" Pl Br. at 13–14 (citing AR 573, 594–95, 611, 620–21, 661, 751, 767, 845-46, 876–77, 805–06, 888–89).

The ALJ did not err in her assessment of Dr. Ho's opinion. The ALJ correctly found that Dr. Ho's opinions were inconsistent with his own findings and the record as a whole. For instance, the ALJ noted that nothing in Dr. Ho's notes explains why in January 2020, Dr. Ho opined that Plaintiff could perform all manner of physical activities for the police academy (AR 599) yet in April 2021, opined that Plaintiff could only sit, stand, and/or walk for two hours (AR 591). AR 41.

**b. Dr. Caroline Salvador-Moses, Psy.D.**

Consultative psychologist Dr. Caroline Salvador-Moses, Psy.D., evaluated Plaintiff on June 24, 2022. AR 791–96. Dr. Salvador-Moses diagnosed Plaintiff with neurocognitive disorder, major depressive disorder, and PTSD, and described Plaintiff's prognosis as "poor." AR 795 ("[Plaintiff] has neurocognitive impairment in a number of areas of functioning since the head injury. He has significant depression as well as trauma symptoms. Symptoms cause distress and lead to clinically significant impairment in various areas of functioning."). Dr. Salvador-Moses opined that Plaintiff's "overall cognitive abilities are in the borderline range"; "composite scores show borderline abilities in non-verbal reasoning and working memory"; "ability to learn and recall new auditory information is in the borderline range while his visual memory is in the severely impaired range"; and "planning, set shifting, sequential abilities, and mental flexibility are low average with both simple and complex tasks." AR 794.

Dr. Salvador-Moses further found that Plaintiff had the following marked impairments: "Ability to understand and carry out complex instructions and tasks"; "Ability to attend to usual work situations, including attendance, safety, etc."; "Ability to deal with changes in a routine work

United States District Court
Northern District of California

environment"; "Pace," "Persistence," and "Ability to interact appropriately with supervisors and co-workers." AR 795–96. Dr. Salvador-Moses further opined that Plaintiff "is unable to manage his own funds independently and will need assistance." AR 796.

The ALJ found Dr. Salvador-Moses' opinion not persuasive. AR 41. The ALJ explained that

> It is overly restrictive and not supported by signs on exam or consistent with the overall record showing a lack of complaints or reports of significant mental health symptoms, is inconsistent with [Plaintiff's] reported activities of daily living, and relatively unremarkable mental status examination findings, including the claimant presenting in no acute distress, was cooperative and pleasant, mood and affect within normal limits, normal speech and language without dysphasia, normal memory with no memory problems, ability to follow commands briskly, intact naming, and normal judgment (5F; 9F/56; 11F/10, 26, 48; 13F; 14F/14; 15F/72, 88).

AR 41–42. The Court finds the ALJ articulated specific reasons as to why Dr. Salvador-Moses' opinion is not supported by or consistent with the record.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 29, 2026



Noël Wise
United States District Judge